Exhibit A

Mary Jo O'Neill  AZ Bar # 005924
Sally C. Shanley AZ Bar # 012251
Katherine J. Kruse  AZ Bar #  019167
T. Diana Chen  AZ Bar #  021706
**EQUAL EMPLOYMENT OPPORTUNITY**
**COMMISSION,** Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, Arizona  85012
Telephone:  (602) 640-5029
e-mail:  katherine.kruse@eeoc.gov
          diana.chen@eeoc.gov
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | Case No. CV05-3034-PHX-FJM |
| Plaintiff, | **PLAINTIFF EEOC'S NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT THE BOEING COMPANY** |
| vs. | |
| The Boeing Company, a Delaware corporation, | |
| Defendant. | |

To: Tibor Nagy, Jr. AZ Bar # 007465
     Erica Rocush AZ Bar # 021297
     Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
     6760 N. Oracle Rd., Suite 200
     Tucson, Arizona  85704-5608
     Attorneys for Defendant

PLEASE TAKE NOTICE THAT, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, the Equal Employment Opportunity Commission ("EEOC") will take the deposition upon oral examination of the following individual(s) designated by Defendant The Boeing Company, at the offices of the EEOC. **The individual(s) most knowledgeable about The Boeing Company with respect to the following subjects:**

Exhibit A

1.     Each step taken by Boeing to determine that there was a need for RIF of
        Manufacturing Engineers in skill code D32 in 2002, including:
        1)  every person involved, and his or her role;
        2)  the documents on which these individuals relied.

2.     Each step taken by Boeing to determine that there was a need for RIF of Liaison
        Engineers in skill code 62E in 2002, including:
        1)  every person involved, and his or her role;
        2)  the documents on which these individuals relied.

3.     The steps taken by Human Resources/Employee Relations to determine the
        numbers for the following categories – year of service, education, and attendance -
        - in the RIF assessments of the Manufacturing Engineers in skill code D32 at
        Boeing Mesa in April, July, and October, 2002, including:
        1)  the documents relied on;
        2)  calculations made;
        3)  each individual involved, and his or her role.

4.     The steps taken by Human Resources/Employee Relations to determine the
        numbers for the following categories – year of service, education, and attendance -
        - in the RIF assessments of the Liaison Engineers in skill code 62E at Boeing
        Mesa in 2002, including:
        1)  the documents relied on;
        2)  calculations made;
        3)  each individual involved, and his or her role.

5.     The role played by Human Resources/Employee Relations officials in reviewing
        and approving managers' assessments of the categories of past performance and
        ability to perform remaining work in the RIF assessments of the Manufacturing
        Engineers in skill code D32 at Boeing Mesa in April, July, and October, 2002.

6.     The role played by Human Resources/Employee Relations officials in reviewing
        and approving managers' assessments of the categories of past performance, and
        ability to perform remaining work in the RIF assessments of the Liaison Engineers
        in skill code 62E at Boeing Mesa in 2002.

7.     Why Boeing EEO did not meet the requirement of Boeing Company Procedure
        CP0141, paragraph 13 to "conduct an analysis to determine if there is adverse
        impact to any protected groups" with regard to the RIF of Manufacturing
        Engineers in skill code D32 at Boeing Mesa in April, July, and October, 2002.

Exhibit A

8.    Why Boeing EEO did not meet the requirement of Boeing Company Procedure CP0141, paragraph 13 to "conduct an analysis to determine if there is adverse impact to any protected groups" with regard to the RIF of Liaison Engineers in skill code 62E at Boeing Mesa in 2002.

9.    The efforts made by Boeing to find other positions for Renee Wrede and the Manufacturing Engineers in skill code D32 who were identified for RIF in April, July and/or October, 2002.

10.   The role of the following individuals in the RIF assessments in 2002 of Manufacturing Engineers in skill code D32, including the nature and extent of their involvement in the RIF process:
      1)  Rich Miller;
      2)  Robert Miller;
      3)  John Fisher;
      4)  Shawn Warner.

11.   All reasons why any contract worker in skill code D32 that remained employed in 2002 was not released prior to the termination of Renee Wrede, in accordance with Boeing Company Procedure CP0141, paragraph 5.

12.   All reasons why any contract worker in skill code 62E that remained employed in 2002, including Henry Ramirez, was not released prior to the termination of Antonia Castron, in accordance with Boeing Company Procedure CP0141, paragraph 5 as shown by the document stamped BOCASE000831.

13.   Whether the Surplus Declaration in March 2002, of Manufacturing Engineers in Skill Code D32, stamped as BOWREDE 000923, ever resulted in creation of a final RIF Assessment spreadsheet similar to that stamped as BOWREDE000957, and, if so, Boeing's efforts to locate that spreadsheet, and the reasons it was unable to do so.

14.   Whether Boeing conducted new assessments of Ability to Perform Remaining Work and Past Performance for Manufacturing Engineers in Skill Code D32 for the July 2002 Surplus Declaration, stamped as BOWREDE 000955, or utilized instead those originally created for the March 2002 Surplus Declaration, BOWREDE 000923; if new assessments were not created for the July 2002 surplus declaration, why they were not.

\\\
\\\

Exhibit A

15. For which Surplus Declaration or Declarations of Manufacturing Engineers in Skill Code D323 did Boeing utilize the following Ability to Perform Remaining Work Evaluations and/or Past Performance Evaluations:
1)  those created by Bruce Wright contained at BOWREDE 000960-967, 971, and 973-979 (dep. ex. 17);
2)  those created by Bruce Wright contained at BOWREDE 000354-366 (dep. ex. 24);
3)  those created by Rich Miller or Tom Gill at BOWREDE000969-970, and 972 (dep. ex. 19);
4)  those created by Tom Gill or Bob Miller at BOWREDE000353, 367-370, 374, and EEOC-BC-00420 (dep. ex. 32);
5)  "Fisher's Matrix", at BOWREDE000134 (dep. ex. 31);
6)  "Gill matrix" at EEOC-BC-00433 (dep. ex. 30);
7)  those contained at EEOC-BC-00456, 436, and 434 (dep. exs. 25-27), and at EEOC-BC-00445, 451-453, 455 (dep. ex. 33).

16. Who created the following documents and for what purpose:
1)  EEOC-BC-00407-408 (dep. ex. 28);
2)  BOWREDE000980-982 and 1024-1025, (contained in dep. exs. 20 and 22).

17. How Antonia Castron's salary or wages would have changed upon her attainment of a master's degree.

18. All discrimination complaints Renee Wrede made internally regarding the RIF assessment, whether to the ethics department or elsewhere, including:
1)  the steps taken to investigate;
2)  each person involved in the investigation;
3)  everyone who was interviewed during the investigation;
4)  every document obtained or generated during the investigation;
5)  the conclusion reached, and the bases for the conclusion.

19. All discrimination complaints Renee Wrede made internally regarding John Fisher and Brett Adams, including:
1)  the steps taken to investigate;
2)  each person involved in the investigation;
3)  everyone who was interviewed during the investigation;
4)  everyone who was contacted during the investigation;
5)  the conclusion reached, and the bases for the conclusion

\\\
\\\

Exhibit A

20.   All discrimination complaints Antonia Castron made internally regarding the RIF assessment, whether to the ethics department or elsewhere, including:
   1)  the steps taken to investigate;
   2)  each person involved in the investigation;
   3)  everyone who was interviewed during the investigation;
   4)  every document obtained or generated during the investigation;
   5)  the conclusion reached, and the bases for the conclusion.

21.   All other discrimination complaints Antonia Castron made to any manager at Boeing about discrimination or harassment, including:
   1)  the steps taken to investigate;
   2)  each person involved in the investigation;
   3)  everyone who was interviewed during the investigation;
   4)  every document obtained or generated during the investigation;
   5)  the conclusion reached, and the bases for the conclusion.

22.   Everyone hired to be a manufacturing engineer at Boeing Mesa in skill code D32 in 2003, whether contract, temporary, or permanent, including Thomas Johnson and Leon Wood, and for each:
   1)  Name of the person hired for the position;
   2)  Title of the position;
   3)  Salary for the position;
   4)  Date the position was filled;
   5)  Whether the position was temporary, or permanent;
   6)  Whether the position was as an employee or a contractor;
   7)  Dates of employment of the person who filled the position;
   8)  Duties of person who filled the position.

23.   Everyone hired to be a Liaison Engineer at Boeing Mesa in skill code 62E in 2003, whether contract, temporary, or permanent, and for each:
   1)  Name of the person hired for the position;
   2)  Title of the position;
   3)  Salary for the position;
   4)  Date the position was filled;
   5)  Whether the position was temporary, or permanent;
   6)  Whether the position was as an employee or a contractor;
   7)  Dates of employment of the person who filled the position;
   8)  Duties of person who filled the position.

\\\
\\\

24. The efforts Boeing undertook to locate the following documents, and the reasons why Boeing was unable to locate the documents:
   1) documents responsive to the EEOC's First Request for Production of Documents ("RFPD 1") , request numbers 25 and 26;
   2) documents responsive to the EEOC's Second Request for Production of Documents ("RFPD 2"(, request numbers 19 and 20;
   3) the Surplus Declaration for the October 2002 RIF of Manufacturing Engineers in Skill Code D32, responsive to RFPD 1, request number 8;
   4) the Surplus Declaration for the 2002 RIF of Liaison Engineers in Skill Code 62E, responsive to RFPD 2, request number 6;
   5) performance evaluations for the year 2002 for Manufacturing Engineers in Skill Code D 32, responsive to RFPD 1, request number 10, as well as the missing performance evaluations for individuals in the same group, listed in the chart in the EEOC's letter to Boeing of September 11, 2006 at page 3;
   6) performance evaluations for the year 2002 for Liaison Engineers in Skill Code 62E, responsive to RFPD 2, request number 9;
   7) Documents Boeing Used to Assess Ability to Perform Remaining Work and Past Performance for Manufacturing Engineers in skill code D32 for the Surplus Declaration of July, 2002, if they differ from those utilized for the Surplus Declaration of April, 2002.

25. All bases for Boeing's position that retrieval of e-mails responsive to EEOC's First Set of Interrogatories, number 25 and 26, and the EEOC's Second Set of Interrogatories, number 19 and 20, "would require specialized hardware which would cost at least $25,000" and "would require at least 200 hundred [sic] dedicated man-hours from a high level systems administrator to retrieve the information, at a cost of at least $30,000" as stated in a letter from counsel for Boeing to the EEOC dated January 11, 2007, and an e-mail from counsel for Boeing to the EEOC dated January 19, 2007.

26. All bases for the following assertions by Boeing in its letters to the EEOC:
   1) Letter of November 7, 2006, assertion regarding RFPD2, requests 22 and 25;
   2) Letter of January 11, 2007; assertions regarding RFPD1, requests 1 and 2 and requests 10-12.

**The deposition will take place at the following place, date, and time:**

**Place:        U.S. Equal Employment Opportunity Commission
                3300 N. Central Avenue, Suite 690
                Phoenix, AZ 85012**

**Date:**               **Wednesday February 14, 2006**

**Time:**               **9:00 a.m.**

Pursuant to Rule 30(b)(6), The Boeing Company is required to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and to set forth, for each person designated, the matters on which the person will testify.

The oral examination will take place before a notary public or some other person authorized by law to administer oaths.  Such deposition shall continue from day to day until completed.  The deposition shall be used for discovery purposes and may be introduced as evidence in the trial of the above-captioned action.

The Boeing Company is reminded that, pursuant to Rule 30(b)(6), Fed. R. Civ. P., it has the responsibility to prepare each designated agent so that each can answer fully, completely, and unevasively.  *Dravco Corp. v. Liberty Mutual Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).  Thus, each designated agent is responsible to prepare by undertaking due inquiry before the deposition.  *See Dravco Corp.*, 164 F.R.D. at 75-76; *Marker*, 125 F.R.D. at 126.

DATED this 31st day of January 2007.

Respectfully submitted,

MARY JO O'NEILL
Regional Attorney

SALLY C. SHANLEY
Supervisory Trial Attorney

s/ Katherine J. Kruse
KATHERINE  J.  KRUSE
T. DIANA CHEN
Trial Attorneys

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Phoenix District Office
Attorneys for Plaintiff

### Certificate of Service

I certify that on this 31st day of January 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Tibor Nagy, Jr. AZ Bar # 007465
Erica Rocush AZ Bar # 021297
Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
6760 N. Oracle Rd., Suite 200
Tucson, Arizona  85704-5608
Attorneys for Defendant


s/ Katherine Kruse

Exhibit B

1    Tibor Nagy, Jr. (#007465)
    Erica K. Rocush (#021297)
2    OGLETREE, DEAKINS, NASH,
3    SMOAK & STEWART, P.C., SBN 00504800
    6760 North Oracle Road, Suite 200
4    Tucson, Arizona 85704
    Telephone: (520) 544-0300
5    Fax: (520) 544-9675
6    tibor.nagy@OgletreeDeakins.com
    erica.rocush@OgletreeDeakins.com
7
8    Attorneys for Defendant

9             UNITED STATES DISTRICT COURT

10               DISTRICT OF ARIZONA

11    Equal Employment Opportunity        No. CV '05-3034-PHX-FJM
    Commission,
12             Plaintiff,           **DEFENDANT THE BOEING**
13                       **COMPANY'S RESPONSE TO**
    v.                           **PLAINTIFF EEOC'S NOTICE OF**
14                       **RULE 30(b)(6) DEPOSITON**
    The Boeing Company, a Delaware
15    corporation,
16             Defendant.

17       In response to Plaintiff EEOC's Notice of Rule 30(b)(6) deposition,

18        (1)     Regarding paragraphs 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 17, 18, 19, 20, 21, 22,

19    and 23, Boeing intends to produce Miguel Gonzalez, who Boeing believes is prepared to

20    testify about the subjects described therein;

21        (2)     Regarding paragraphs 1, 9, 10, 13, 14, 15, 16, 18, and 19, Boeing offers to

22    be bound by the prior deposition testimony of Robert G. Feuerstein dated November 29,

23    2006 and prior deposition testimony of Robert Bruce Wright dated November 28, 2006.

24    Boeing does not intend to produce any individuals to testify about the subject matter

25    described in these paragraphs, except as to portions of paragraphs 9 and 13, to which it

26    will also offer the testimony of Mr. Gonzalez. Additionally, Boeing's position regarding
    some of the information described in one or more of these enumerated paragraphs are
    addressed in Boeing's responses and supplemental responses to EEOC's requests for

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6760 NORTH ORACLE ROAD, SUITE 200
TUCSON, ARIZONA 85704
(520) 544-0300

Exhibit B

1   production. non-uniform interrogatories, and requests for admission.

2        (3)    Regarding paragraphs 2 and 12, Boeing offers to be bound by the prior

3   deposition testimony of William R. Charlton dated January 4, 2004.

4

5        (4)    Regarding paragraphs 24, 25, and 26, Boeing objects to the use of a Rule

6   30(b)(6) deposition, as it is an improper means to obtain the information set forth in these

7   paragraphs.   Moreover, Boeing has expressed its position regarding its efforts to locate

8   documents which are no longer available (or which may never have existed), in multiple

9   letters to the EEOC, as well as its responses and supplemental responses to EEOC's

10  requests for production and non-uniform interrogatories.   Additionally, the information

11  sought in paragraph 25 is specifically addressed in an affidavit by Michael K. Bergman,

12  which was attached to Boeing's Response to Plaintiff's Motion to Compel.

13       DATED this 14th day of February, 2007.

14                           Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

15

16                           By

17                           Tibor Nagy, Jr.
                             Erica K. Rocush
18                           6760 North Oracle Road, Suite 200
                             Tucson, AZ 85704
19                           Attorneys for Defendant

20

21

22

23

24

25

26

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6760 NORTH ORACLE ROAD, SUITE 200
TUCSON, ARIZONA 85704
(520) 544-0300

Exhibit B

1   ORIGINAL of the foregoing
    Hand-delivered this 14th day of
2   February, 2007, to:

3
    Mary Jo O'Neill
4   C. Emanuel Smith
    Katherine J. Kruse
5   T. Diana Chen
6   EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
7   Phoenix District Office
8   3300 North Central Ave., Suite 690
    Phoenix, AZ 85012-2504
9   Attorneys for Plaintiff

10

11

12

13  4665130.1

14

15

16

17

18

19

20

21

22

23

24

25

26

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
6760 NORTH ORACLE ROAD, SUITE 200
TUCSON, ARIZONA 85704
(520) 544-0300

**Ogletree
Deakins**
ATTORNEYS AT LAW

Exhibit C

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

6760 N. Oracle Road
Suite 200
Tucson, Arizona 85704-5608
Telephone: 520.544.0300
Facsimile:  520.544.9675
www.ogletreedeakins.com

November 7, 2006

**VIA ELECTRONIC MAIL**

Katherine J. Kruse
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Ave., Suite 690
Phoenix, AZ 85012-2504

RECEIVED BY

NOV 0 8 2006

EEOC PHX LEGAL

Re: EEOC vs. The Boeing Company
    CV05-3034-PHX-FJM (Antonia Castron and Renee Wrede)

Dear Kathy:

As promised, I am writing to address some of the issues raised in your September 8, 11, and 12, 2006 and October 3, 2006 letters.  Specifically, this letter responds to the issues raised in your October 3, 2006 letter regarding purported deficiencies in Boeing's responses to the EEOC's Second Request for Production of Documents ("2nd RFP").

First, you noted that Boeing stated in its initial Response to the 2nd RFP that it would supplement with documents responsive to several of the EEOC's requests.  Boeing has since conducted a thorough search of its records.  To the extent any additional documents have been located to date, they are attached to Boeing's First Supplemental Response to the 2nd RFP, which is being mailed concurrently with this letter.  For all requests for which there are no supplemental documents being produced, Boeing has been unable to locate any further documents responsive to these requests.  Therefore, unless expressly addressed below, Boeing has nothing further to provide you with regards to any specific request.

Next, your concerns regarding purported deficiencies in Boeing's responses to individual requests are addressed as follows:

**Request No. 1**

Regarding subsection (e) of this Request, although Boeing did provide layoff notices to each individual who was laid off, there was no requirement that the supervisors notifying the

Exhibit C



November 7, 2006
Page 2

employees of the layoff keep a copy of each such notice. The supervisor responsible for the layoffs for Castron's work group did not keep copies of the individual layoff notices given to each individual notified of layoff. Therefore, the only documentation relating to notification of the employees that still exists is the form letter which was previously disclosed. *See* BOWREDE000897. Similarly, the form letter previously disclosed at BOWREDE00897 is the only document relating to layoff notification that Boeing has in its control or possession that is responsive to subsection (f) of the Request, as Boeing did not provide any additional layoff notification to those individuals notified of selection for RIF.[1] However, all individuals assessed with Castron who were notified of selection for RIF were laid off. Moreover, as these individuals were all laid off as of the date originally scheduled for layoff, there are no documents responsive to subsection (g) of the Request, as nobody had their layoff either extended or cancelled.

We are still in the process of confirming whether Ted Pierce and/or Tracy Zahn were assessed with Castron for selection for RIF, and I will let you know as soon as I have received confirmation as to whether they were included in Castron's RIF assessment.

**Request No. 3**

The EEOC requested all documents related to employees who were notified they had been selected for RIF but were not laid off. Boeing does not have any documents responsive to this request, as each employee assessed with Castron for RIF who was notified that he or she had been selected for lay off was indeed laid off, at the time initially planned for layoff.

**Request No. 5**

All of the documents that were used for the RIF assessments have been disclosed. Specifically to address your concern, the only documentation used in the assessment for RIF was the "Ability to Perform Remaining Work Evaluation." Individual performance evaluations were not used in the RIF assessment process.

**Request No. 9**

Boeing has previously disclosed all of the performance evaluations it has been able to locate for the individuals assessed for RIF with Castron in 2002. Notwithstanding the foregoing, Boeing is still searching for any performance evaluations for individuals assessed for RIF with Castron which were not previously disclosed. Boeing will supplement if any more evaluations which are responsive to this request and are relevant are located.

---

[1] The foregoing discussion regarding subsections (e) and (f) of Request No. 1 also apply to Request No. 1 of EEOC's First Request for Production of Documents, regarding lay-off notices for those assessed with Renee Wrede.

Exhibit C



November 7, 2006
Page 3

### Request No. 10

The training records for all employees assessed for RIF with Castron are attached to Boeing's First Supplemental Response to the EEOC's Second Request for Production of Documents, at BOCAST000716-817.

### Request No. 11

The Employee Profiles for each employee of Boeing are printouts from a computer database. Therefore, these profiles automatically update to the present time. However, Boeing relied on all of the information available as of the time the RIF assessment was performed. Therefore, all information contained in the Employee Profiles as of the date of the RIF would have been used in the RIF assessment process. Because of the computer-based nature of this information, Boeing is unable to provide you with Employee Profiles limited to the time period immediately prior to the RIF.

As for the illegibility of BOCAST000396-403, I am attaching another copy of these documents, which have been darkened as much as possible to assist with reading the handwritten comments.

Finally, Boeing has not been able to locate any documents listing leaves of absence and FMLA leave at the time of the RIF assessment for those assessed with Castron other than those documents which have been previously disclosed, including the foregoing BOCAST000396-403.

### Request No. 12

Boeing does not have any documentation responsive to this request which has not already been disclosed and does not have any knowledge that any such documentation ever existed.

### Request No. 13

Boeing has conducted a diligent search of its records and has not located any other documents relating to the investigation. Specifically, Boeing has been unable to locate any formal Investigation Report. Boeing has no knowledge that any formal report was ever created in response to this investigation. Furthermore, Boeing has already disclosed all documents created or relied on during the investigation into Castron's internal complaint regarding her layoff. Therefore, there is nothing further to disclose in response to this request.



November 7, 2006
Page 4

### Request No. 15

Notwithstanding your disbelief, Boeing does not have any documents responsive to this request.  Boeing does not produce any documentation for internal transfers, as such transfers are recorded solely in the computer database as an entry on the employee's Work History. Therefore, all recorded information relating to Castron's transfer to structures is included in Castron's Work History, which has been previously disclosed.

### Request No. 17

There were no individual written inputs used as part of the RIF assessment.  The only written inputs used during the RIF assessment process were those recorded on the "Ability to Perform Remaining Work" evaluations.  Therefore, there are no documents responsive to this request which have not been previously disclosed.

### Requests No. 19 and 20

Boeing renews its objection to these requests as being overly broad and seeking information that is not relevant.  Notwithstanding the foregoing, Boeing has conducted a thorough search and has been unable to locate any documents responsive to these requests which have not been previously disclosed.

### Request No. 22

The Work History for Brandon Weiss and Kenneth Young are attached to Boeing's First Supplemental Response to EEOC's Second Request for Production of Documents, at Bates Nos. BOCAST000818-821.  These are the only two individuals who have been hired since January 1, 2003 as either Liaison Engineers or Engineering Specialists in Mesa.  Boeing objects to the request to the extent it seeks information regarding Boeing's El Segundo, California site, as Castron never applied for a position at the El Segundo site and no one from Castron's work group was ever re-assigned to the El Segundo site.  As such, any information relating to the site is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

### Request No. 25

Boeing has not been able to locate any record of any complaints to the Ethics Hotline made by either Castron or any other female engineer in the PSA group in Mesa in 2002. Furthermore, Boeing has no knowledge that either Castron or any other female engineer in the PSA group in Mesa ever did complain to the Ethics Hotline in 2002.

Exhibit C



November 7, 2006
Page 5

### Request No. 27

The Non-Boeing Labor Work History for Henry Ramirez is attached to Boeing's First Supplemental Response to EEOC's Second Request for Production of Documents at Bates No. BOCAST000831.

### Request No. 28

Boeing does not have any documents responsive to this request which were not disclosed with Boeing's Response to EEOC's Second Request for Production of Documents.

I trust that this responds to all of your concerns regarding Boeing's Response to EEOC's Second Request for Production of Documents. We are still looking into the concerns you have raised regarding Boeing's Response to EEOC's First Request for Production of Documents, and will respond to you as soon as possible regarding those issues.[2]

In the interim, please do not hesitate to contact me if you have any questions regarding the foregoing.

Very truly yours,

Erica K. Rocush
*Attachments*
cc: Tibor Nagy, Esq.

---

[2] Nevertheless, to prevent further delay, attached to this letter are copies of Bates Nos. BOWREDE000858-885, which you stated were omitted (inadvertently) from Boeing's Response to Request No. 23 of the 1st RFP.

4478947.2



Exhibit D

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

6760 N. Oracle Road
Suite 200
Tucson, Arizona 85704-5608
Telephone: 520.544.0300
Facsimile:  520.544.9675
www.ogletreedeakins.com

**ATTORNEYS AT LAW**

January 11, 2007

## VIA ELECTRONIC AND REGULAR MAIL

Katherine J. Kruse
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Ave., Suite 690
Phoenix, AZ 85012-2504

      Re: EEOC vs. The Boeing Company
          CV05-3034-PHX-FJM (Antonia Castron and Renee Wrede)

Dear Kathy:

    I am writing to further respond to your letters of September 8, 11, and 12, 2006, regarding Boeing's Response and supplemental responses to EEOC's First Request for Production of Documents (1st RFP) and to clarify a few outstanding issues regarding Boeing's Response and supplemental responses to EEOC's Second Request for Production of Documents (2nd RFP).

### Supplemental Responses to 2nd RFP

    First, regarding Boeing's responses to the 2nd RFP, you asked for confirmation whether Tracy Zahn and/or Ted Pierce were assessed for RIF with Castron in October 2002. Neither of these individuals was assessed for RIF in October 2002, because Ted Pierce was a manager at the time of the 2002 RIF, and thus not in Castron's skill management code and Tracy Zahn took a job within another part of Boeing prior to the beginning of the RIF assessment process. Accordingly, there is no RIF assessment documentation for either of these individuals.

    Regarding outstanding performance evaluations for individuals assessed with Castron for RIF, Boeing does not have any performance evaluations other than those previously disclosed. To the extent that not every individual assessed for RIF with Castron has a performance evaluation for every year, it is because, although each employee is supposed to be evaluated each year, sometimes managers simply fail to complete all of their required evaluations. Therefore, not every employee receives an evaluation every year.  Boeing has produced all of the performance evaluations that were completed for the individuals assessed for RIF with Castron in October 2002.  Moreover, for those employees assessed for RIF by Rick Hobby, the performance evaluations are irrelevant, as Mr. Hobby did not rely on any prior performance evaluations in generating the performance scores used for the RIF assessment.

Exhibit D



January 11, 2007
Page 2

## Supplemental Responses to 1st RFP

### Requests No. 1 and 2

In requesting additional information responsive to these requests, EEOC noted that summary worksheets were provided for the "Ability to Perform Remaining Work" evaluations for some employees assessed with Wrede for RIF and that individual worksheets were provided for other employees, and then requested that summary worksheets or individual evaluations be provided for each individual assessed with Wrede for RIF. Boeing has conducted a thorough search of its records, and has not located any individual "Ability to Perform Remaining Work" evaluations or summary worksheets that have not already been disclosed. To clarify what may be a misconception that there may be missing documents because both a summary worksheet and individual evaluation have not been produced for each employee, this is because the managers assessing their employees for the RIF assessment used *either* the summary worksheet or the individual evaluation form, not both. Specifically, although Bruce Wright created an individual worksheet for each employee he assessed (*see, e.g.*, BOWREDE000354), Tom Gill used a summary spreadsheet for all of his employees (BOWREDE00395-397). Therefore, although the format of the evaluation is not the same for all of the employees, all of the ability to perform evaluations have been disclosed. To the extent any employee has multiple evaluations, this would be the rare exception in the event that an employee worked for both Mr. Wright and Mr. Gill in the months immediately preceding the assessment.

Similarly, Bruce Wright and Tom Gill also used different forms to record their evaluations of their employees' past performance for inclusion in the final RIF roster. To that end, although Tom Gill apparently used the forms at BOWREDE000378-384 to formulate performance rankings for his employees, Bruce Wright did not create a separate form to record the performance of his employees, but rather relied on the employees' last annual performance evaluation as the source of his performance scores for the RIF assessment. Therefore, to the extent that any underlying performance evaluations were created for the RIF assessment, all such documents have been disclosed.

The different formats for the performance evaluations and "Ability to Perform Remaining Work" evaluations resulted because managers were not required to use any particular form and were allowed to use whatever method they believed best captured the information that was required for the RIF rosters. Nonetheless, although the information is contained in different forms, all of the evaluations used for the assessments for the employees assessed with Wrede in 2002 for RIF have been produced.

Regarding subsection (e) of Request No. 1, although Boeing did provide layoff notices to each individual who was laid off, there was no requirement that the supervisors notifying the employees of the layoff keep a copy of each such notice. The supervisor responsible for the layoffs for Wrede's work group did not keep copies of the individual layoff notices given to each individual notified of layoff. Therefore, the only documentation relating to notification of the employees that still exists is the form letter which was previously disclosed. *See* BOWREDE000897. Similarly, the form letter previously disclosed at BOWREDE00897 is the only document relating to layoff notification that Boeing has in its control or possession that is responsive to subsection (f) of the Request, as Boeing did not provide any additional layoff notification to those individuals notified of selection for RIF.

Exhibit D



January 11, 2007
Page 3

As for documentation showing cancellation or extension of layoff, the only documentation reflecting such changes are one email, BOWREDE001043, and the work history for each employee assessed with Wrede, all of which have been previously disclosed. There is no other documentation reflecting cancellation or extension of layoff because when an employee's layoff was extended or cancelled, the communications related to the extension and/or cancellation were almost exclusively verbal, and therefore no documentation was created. Furthermore, the changes in the employees' status resulting from the cancellation or extension were documented exclusively in the employees' computerized work histories, as that is how all employee status changes are recorded.

Finally, you inquired whether there were any forms listing Leaves of Absence and/or FMLA leave and attendance records for the years for which attendance was assessed for the 2002 RIF's. There are no such records for any employees assessed for RIF with Wrede in 2002. All attendance information used for the RIF assessments came directly from Boeing's electronic timekeeping system, which automatically records attendance for each employee when he or she clocks in and out each day. The attendance reports and FMLA/LOA reports that have been disclosed were simply tools that some managers chose to use to manage their employees' attendance. However, such forms were not required and were not used to assess attendance as part of the RIF assessment, and therefore to the extent they exist are not relevant. Attendance scores used in the RIF assessments were calculated by the Human Resources department using only the information obtained from Boeing's electronic timekeeping system.

### Request No. 3

*See* documents attached hereto at Bates Nos. BOWREDE001259-1288.

### Requests No. 4, 5, and 6

*See* Response to Requests No. 1 and 2, *supra.*

### Request No. 7

Despite a diligent search, Boeing has not been able to locate the surplus declaration for the October 2002 RIF for Wrede's skill classification and job code. All other surplus declarations for 2002 have been previously disclosed. *See* BOWREDE000923, 955.

### Request No. 8

Ms. Berg was never included in a surplus roster and was never assessed for RIF during 2002. Boeing has already produced all of the surplus rosters for the 2002 RIF's containing Renee Wrede and/or Carmel Madison. *See* BOWREDE000903, 957-958, 1007, 1046-1047.

### Requests No. 10-12

As shown in the surplus rosters for the July 2002 and October 2002 RIF's, the same individuals were assessed with Wrede for both RIF's. Therefore, all of the documentation which has been disclosed for the October RIF applies to the July RIF, although the ability to perform remaining work evaluations were updated for the October 2002 RIF, and therefore replaced the



January 11, 2007
Page 4

evaluations created for the July RIF. As the documents were created electronically, the October evaluations replaced the July evaluations, which therefore no longer exist.

Regarding the performance evaluations for employees assessed for RIF with Wrede in 2002, *see* response to Requests No. 1 and 2, *supra*.

The years of service for each employee assessed with Wrede for the 2002 RIF's can be found on the Employee Profile and Work History for each employee, which have already been produced. *See, e.g.*, BOWREDE000549-581. Documentation showing education and training for each employee assessed for RIF with Wrede in 2002 was produced in Defendant's Third Supplemental Response to EEOC's 1st RFP.

### Requests No. 16, 18, 19 and 29

Boeing has conducted a diligent search of its records and has not located any other documents relating to any investigation into any internal EEO and/or Human Resources complaint made by Ms. Wrede regarding either harassment or her layoff. Specifically, Boeing has been unable to locate any additional interview notes relating to her layoff complaint or a summary of the investigation or recommendations regarding her harassment complaint. Boeing has no knowledge that any additional notes ever existed or that any summary or recommendations were ever created in response to the investigation. If any interview summaries were created that have not been disclosed, these summaries were destroyed in accordance with Boeing's practice that investigators destroy any handwritten investigative notes once a report has been prepared, which summarizes the contents of the notes.

### Request No. 17

All documents in Boeing's control or possession which are responsive to this request have been disclosed. For a job description of Wrede's position, *see* BOWREDE001258, attached to Boeing's Third Supplemental Response to EEOC's First Request for Production.

### Request No. 20

Boeing has disclosed all of the documents which it has that were contained in any and all personnel files maintained for Wrede. To the extent there are documents which you believe should be in the files that have not been disclosed, such documents must not have been kept in Wrede's personnel files. As for the Employee Status Change Notices, Boeing no longer creates such documents, as all changes in employee status are recorded in the electronically-maintained Work History for each employee. As for the missing performance evaluations, we do not know why they would not be in the file, except perhaps Wrede did not receive a performance evaluation for each year she was employed at Boeing, or the evaluation did not make it into her employee file. Nonetheless, everything that was in any of Wrede's maintained personnel files has been produced.

### Requests No. 21 and 22

As we have previously stated, there were no written inputs provided for the RIF assessments for the individuals assessed with Wrede other than the documents described in



January 11, 2007
Page 5

response to Requests No. 1 and 2, *supra*. To explain further, neither Bruce Wright, Richard Miller or Robert Miller solicited input, written or otherwise, from any other managers or employees in preparing their RIF assessments, although they did discuss their assessments with their supervisor, Rob Feuerstein. Moreover, as Tom Gill testified in his deposition, although he did solicit input from others in conducting his RIF assessments, he has not retained any documentation that he may have received in response to the requests he made to others for input, if he even received any responses to his requests. Therefore, there are no documents responsive to these requests which have not previously been disclosed.

### Requests No. 25 and 26

Boeing has already disclosed all of the documents responsive to these requests which it has been able to recover from each individual's electronic files and hard copy files. To recover any further electronic documentation, would be unduly costly. Boeing has consulted with computer specialists who have analyzed the potential cost to access any further electronic data. The specialists opined that to access archival information for the individuals identified in the discovery requests would require specialized hardware which would cost at least $25,000. In addition, it would require at least 200 hundred dedicated man-hours from a high level systems administrator to retrieve the information, at a cost of at least $30,000. Therefore, the minimum cost to restore the servers to investigate whether there is any other electronic documentation responsive to these requests would be $55,000. If any problems were encountered in accessing or restoring the data, the cost would increase significantly. Based on these cost estimates, and the small likelihood that any relevant documentation would be located, the cost to provide any additional documentation responsive to this request is unduly burdensome, and therefore not required under Fed.R.Civ.P. 26.

### Request No. 28

Boeing objects to this request to the extent it seeks information relating to employees hired as Mechanical Engineers for the El Segundo site, because such information is irrelevant, as Wrede was given an opportunity to apply for the open positions in El Segundo and chose not to apply. Subject to, and without waiving the foregoing objection, *see* documents attached hereto at BOWREDE001279-1304, the Work History for all employees hired as Mechanical Engineers for the Mesa and El Segundo sites from January 2003 to the present.

### Request No. 32

There were no contract workers in Wrede's work group in 2002. Therefore, there are no documents responsive to this request.

### Request No. 33

Carmel Madison was the only employee who applied for the open positions in the warehouse. Her work history has been previously disclosed. *See* Bates Nos. BOWREDE001056-1059.

Exhibit D



January 11, 2007
Page 6

### Requests No. 30 and 35

Boeing has been unable to locate any documents responsive to these requests which have not previously been disclosed. Except for the documents previously disclosed, all communications regarding efforts to find positions for those assessed for RIF with Wrede, including Wrede, were verbal. To the extent anyone assessed for RIF with Wrede found work in another position within Boeing, that new position is reflected in each employee's Work History, which have previously been disclosed. *See* BOWREDE000317-321, 332-347.

### Request No. 34

Boeing disclosed the job title and RIF notification, if any, of Stephen Slachta, Richard Bolte and Donald Gschwender in its Third Supplemental Response to the 1st RFP. *See* BOWREDE001248-1257. The remaining individuals listed in Request No. 34 were all management employees at the time of the 2002 RIF assessments. Therefore, information relating to their job title and RIF notification is not relevant to any matter at issue in this case, as they were not in the same skill management code or job classification as Wrede at the time of any of the 2002 RIF assessments.

I trust that this responds to all of your remaining concerns regarding Boeing's response to EEOC's 1st RFP and 2nd RFP. However, if you have any remaining questions regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Erica K. Rocush
*Attachments*
cc: Tibor Nagy, Esq.

4545772.1

Exhibit D

**From:**      KATHERINE KRUSE
**To:**        BRADY, PHYLLIS;  GRIERSON, LINDA;  THUDE, BILLIE
**Date:**      1/12/2007 10:08:17 AM
**Subject:**   Fwd: EEOC v. Boeing

Phyllis and Linda -

Whoever does the mail log today, please add the letter contained in the attached e-mail to the mail log.

Billie, I am printing out the letter and documents.   They will need to be added to the Boeing notebook.

Kathy

Exhibit D

**From:**      "Rocush, Erica" <Erica.Rocush@ogletreedeakins.com>
**To:**        "KATHERINE KRUSE" <KATHERINE.KRUSE@EEOC.GOV>, "Diana CHEN"
<Diana.CHEN@EEOC.GOV>
**Date:**      1/11/2007 3:57:51 PM
**Subject:**   EEOC v. Boeing

Kathy -

Attached is the letter explaining our responses to your discovery
requests.
 <<Ltr - Kruse - resp w_exh_001.pdf>>
Erica K. Rocush
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
6760 N. Oracle Road, Suite 200
Tucson, AZ 85704-5608
Direct:   520-575-7443
Cell:     520-237-3212
FAX:      520-544-9675
Ogletree Deakins is one of the nation's largest management labor and
employment law firms. The firm offers national representation in every
aspect of labor and employment law, represents a diverse range of
clients, and has 28 offices across the country.
ATLANTA, AUSTIN, BIRMINGHAM, CHARLESTON, CHARLOTTE, CHICAGO, CLEVELAND,
COLUMBIA, DALLAS, GREENSBORO, GREENVILLE, HOUSTON, INDIANAPOLIS, KANSAS
CITY, LOS ANGELES, MIAMI, MORRISTOWN, NASHVILLE, PHILADELPHIA,
PITTSBURGH, PHOENIX, RALEIGH, ST. THOMAS, SAN ANTONIO, TAMPA, TORRANCE,
TUCSON, WASHINGTON, D.C.

        Employers & Lawyers, Working Together. www.ogletreedeakins.com

This transmission is intended by the sender and proper recipient to be
confidential, intended only for the proper
recipient, and may contain information that is privileged, attorney work
product or exempt from disclosure
under applicable law. If you are not the intended recipient, you are
notified that the dissemination, distribution
or copying of this message is strictly prohibited. If you receive this
message in error, or are not the proper
recipient, please notify the sender at either the e-mail address or
telephone number above and delete this email
from your computer. Receipt by anyone other than the proper recipient is
not a waiver of any attorney-client,
work product, or other applicable privilege. Thank you.


> -----Original Message-----
> From:        Ogletree & Deakins Attys [mailto:canoncopier@odnss.com]
> Sent:        Thursday, January 11, 2007 1:43 AM
> To:   Rocush, Erica; Nagy, Tibor Jr.; Ceravolo, Piper S.
> Subject:        Boeing - EEOC
>
>