**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>vs.<br><br>The Boeing Company,<br><br>Defendant. | No. CV 05-03034-PHX-FJM<br><br>**ORDER** |

This case arises out of defendant Boeing's decision to transfer and terminate Antonia Castron, and its decision to terminate Renee Wrede. Plaintiff alleges that those actions were "discriminatory and/or retaliatory." Complaint (doc. 1) at 2-3.

The court has before it defendant's motion for summary judgment (doc. 103) and statement of facts ("DSOF") (docs. 104 and 105); plaintiff's response (doc. 111), notice of errata regarding the response (doc. 112), statement of facts ("PSOF") (docs. 108 and 109), "Notice of Errata Re: Docket No. [108]" (doc. 125), and response to defendant's statement of facts (doc. 110); defendant's reply in support of its motion (doc. 116); defendant's "Response to Plaintiff's Statement of Facts" (doc. 117) and defendant's "Reply to Plaintiff's Local Rule of Practice 56.1(b) Response to Defendant's Separate Statement of Facts" (doc. 118); plaintiff's "Motion to Strike 'Defendant's "Response to Plaintiff's Statement of Facts' and 'Defendant's Reply to Plaintiff's Local Rule of Practice 56.1(b) Response to Defendant's

Separate Statement of Facts' or, in the Alternative Motion for Leave to Respond to Both of these Pleadings" (doc. 124), defendant's response to plaintiff's motion to strike (doc. 127), and plaintiff's reply in support of its motion to strike (doc. 129).

I.

We first turn to plaintiff's claims arising out of Wrede's termination. Wrede was hired by defendant in 1989, and in 1991 began working as a Manufacturing Engineer ("ME"). DSOF 24, 26, 27. Defendant's employees are assigned a "skill management code" based on the nature of their work. DSOF 13. In October 2002, defendant determined that it had an excess of employees in D32, Wrede's skill management code. DSOF 60, 67.

A.

Defendant moves to dismiss the disparate treatment claims that pertain to Wrede, arguing that there is no evidence that she was selected for layoff, and eventually laid off, because of her sex. Motion for Summary Judgment at 5-8. A prima facie case of disparate treatment is established if the plaintiff shows that "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). Defendant does not challenge plaintiff's prima facie case, see Motion for Summary Judgment at 4; therefore, we assume that plaintiff has met its prima facie burden.

To rebut the presumption of discrimination, defendant must articulate a "legitimate, nondiscriminatory reason for the challenged action." Villiarimo, 281 F.3d at 1062. If defendant succeeds, then "plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " Id. (citation omitted).

Defendant argues that Wrede was laid off "due to departmental reductions in force, which were necessitated by a downturn in expected work and budgetary constraints." Motion for Summary Judgment at 4. If any of defendant's plants have a surplus of workers,

1   it conducts reductions in force (RIFs). DSOF 11. As part of the RIF, defendant creates a
2   roster identifying "the affected skill management code." DSOF 15. Those listed on the
3   roster are subject to layoff. DSOF 16. Defendant assesses each surplus employee's
4   attendance, formal education, service time, ability to perform remaining work and
5   performance. DSOF 18. The last two categories are assessed by management, whereas the
6   first three are calculated by Human Resources. Id. The employees with the lowest
7   assessment scores are identified for layoff. DSOF 22, 23. As a result of their assessment
8   scores, seven MEs in skill code D32, including Wrede, were identified for layoff from
9   Boeing's Mesa plant during an October 2002 RIF. DSOF 87. We conclude that defendant
10  has articulated sufficient nondiscriminatory reasons for Wrede's identification for layoff.

11       Plaintiff's response does not distinguish between its disparate treatment and retaliation
12  claims.[1] This is problematic at the pretext stage. An employer may harbor both sex-based
13  animus and retaliation-based animus. However, in the context of disparate treatment,
14  plaintiff must establish that defendant's proffered reasons hide *sex-based* animus. See, e.g.,
15  Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1143 (9th
16  Cir. 2001) (when a woman passed over for a promotion is referred to as "Mommy" in the
17  workplace, there is evidence that she was "singled out on the basis of her sex").[2]

---

[1] Plaintiff's complaint suggests that Wrede's termination gives rise to one Title VII claim. Complaint at 3. However, plaintiff presents evidence of pretext regarding defendant's decision to identify Wrede for layoff *and* defendant's purported failure to assist Wrede in securing new employment within Boeing. We construe plaintiff's complaint as alleging discrimination in relation to these two decisions. Plaintiff argues that the decision to identify Wrede for layoff "was motivated by discriminatory/retaliatory animus." Response at 5. Therefore, we conclude that the decision to identify Wrede for layoff itself gives rise to two claims. Plaintiff also alleges that "the difference between the assistance Boeing provided the males identified [for layoff] with finding other jobs, as compared to the assistance it provided to Wrede" is additional evidence of "pretext and bias." Response at 9. For purposes of this order, we conclude that plaintiff alleges additional claims of disparate treatment and retaliation stemming from defendant's failure to place Wrede in a new position.

[2] In the case of retaliation, a proffered reason is pretextual if it disguises animus that targets employees who have, for example, "opposed any practice made an unlawful

A plaintiff may "demonstrate that the proffered reason was not the true reason for the employment decision . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).  Direct evidence is, on its own, highly probative of pretext.  It " 'proves the fact [of discriminatory animus] without inference or presumption.' " Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005) (citation omitted).  Therefore, we first address whether plaintiff has introduced direct evidence.

Direct evidence consists of "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." Id.  However, "[s]tray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process" are not proof of direct evidence. Adams v. Corp. Realty Servs., 190 F. Supp. 2d 272, 276-77 (D.P.R. 2002).  Rather, the remarks or comments at issue "must be linked to the adverse employment decision." Id. (citing Ayala-Gerena v. Bristol Myers Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996)).  "The critical inquiry . . . is whether gender was a factor in the employment decision *at the moment it was made*." Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989) (emphasis in original), overruled on other grounds as stated in O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 760 (9th Cir. 1996).[3]

---

employment practice" by Title VII.  42 U.S.C. § 2000e-3(a).

[3] A decisionmaker's discriminatory remarks unrelated to the adverse decision constitute " 'specific instances of discriminatory statements' from which the reasons for the adverse employment decision would have to be inferred.' " Shorter v. ICG Holdings, Inc., 188 F.3d 1204, 1208 (10th Cir. 1999).  In the context of pretext, we are persuaded that "[a]lthough such comments may serve as circumstantial evidence of discrimination . . . the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee." Id. at 1209-10.  The Ninth Circuit has addressed a similar issue, holding that a decisionmaker's ambiguous comment, which is not directly tied to an adverse decision, is not evidence sufficient to rebut an articulated nondiscriminatory reason. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996).

1    None of plaintiff's evidence is direct evidence of sex-based termination. The record
2 includes evidence that Wrede accused several of defendant's employees of sexual
3 harassment. See Response at 3, 5. However, the sex-based comments giving rise to those
4 allegations occurred outside of the decision to terminate Wrede. On their own, they are not
5 direct evidence highly probative of pretext in the context of Wrede's termination.

6    "Where direct evidence is unavailable . . . the plaintiff may come forward with
7 circumstantial evidence . . . to show that the employer's proffered motives were not the actual
8 motives because they are inconsistent or otherwise not believable." Bodett v. Coxcom, Inc.,
9 366 F.3d 736, 743 (9th Cir. 2004). Plaintiff's circumstantial evidence does not show that
10 defendant's proffered reasons for Wrede's layoff are to be disbelieved.

11    Plaintiff first argues that Brett Adams' participation in Wrede's layoff renders the
12 decision to terminate Wrede tainted by animus. Response at 2-3. Adams evaluated Wrede,
13 but was not the ultimate decision-maker with authority to terminate her. Nevertheless, "Title
14 VII may still be violated where the ultimate decision-maker, lacking individual
15 discriminatory intent, takes an adverse employment action in reliance on factors affected by
16 another decision-maker's discriminatory animus." Galdamez v. Potter, 415 F.3d 1015, 1026
17 n.9 (9th Cir. 2005).

18    Wrede accused Adams of sexual harassment in October 2001. Response at 3. As a
19 result, Boeing reprimanded Adams. Id. Adams evaluated Wrede in 2001, after he learned
20 of her complaint against him. Id. Bruce Wright completed Wrede's "Ability to Perform"
21 and "Past Performance" evaluations as part of the October 2002 RIF. Id. According to
22 plaintiff, Wright "referred" to Adams' 2001 performance evaluation in completing his
23 October 2002 assessment of Wrede. Response at 4. Therefore, plaintiff argues, even if
24 Wright lacks discriminatory intent, his reliance on Adams' input taints Wrede's October
25 2002 assessments.

26    However, Adams' 2001 evaluation of Wrede does not taint her October 2002
27 assessments. First, although plaintiff contends that Adams criticized Wrede in the 2001
28 performance evaluation, Response at 4, a review of his comments in their entirety suggests

- 5 -

1  otherwise. Adams stated that "Areas of improvement include: A better understanding of
2  Quality Systems and requirements, communication, and organization." Id. (citing PSOF 57).
3  Defendant provides a more thorough account of Adams' comments. Before suggesting areas
4  for improvement, Adams stated that:

> Renee [Wrede] does in fact have an above average of [sic] concern with respect to reducing the cycle time of producing composite assemblies in support of "Line moves" of the Longbow Apache assembly line. In addition, her thorough knowledge of Composites manufacturing has been of great assistance to all employees associated with the Team that she supports.

8  DSOF 101. Plaintiff does not dispute this version of Adams' comments.

9  Even if Adams' comments are in any way affected by his own animus, there is no
10 evidence in the record that defendant laid off Wrede "in reliance" on Adams' comments. At
11 most, Wright "referred" to performance evaluations completed by Adams in 2001 to
12 complete Wright's October 2002 assessments. Response at 4. Plaintiff concedes that
13 Wright's October 2002 assessments do not expressly reference Adams' evaluation;
14 nevertheless, plaintiff notes that Wright was "certainly familiar" with Adams' comments.
15 Id. An ultimate decision-maker's familiarity with another employee's generally positive
16 evaluations does not create an inference that the decision-maker relied on animus.

17 Finally, although plaintiff challenges defendant's overall assessment of Wrede's
18 qualifications, plaintiff does not present any evidence that Adams' evaluations are inaccurate.
19 Rather, plaintiff rests on the fact that Adams' evaluations were negative. Not only is this
20 characterization debatable, it is meaningless. "Pretext is a 'lie, specifically a phony reason
21 for some action.' " Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 737 (7th Cir. 2006)
22 (citation omitted). Nothing in the record suggests that Adams' evaluation was phony.

23 Plaintiff also contends that John Fisher's participation in Wrede's assessments is
24 problematic. See Response at 5. Wrede accused Fisher of sexual harassment in 1999. Id.
25 As a result, Fisher received a "Corrective Action Notice." Id. Plaintiff alleges that "Wright
26 **or** department manager Rob Feuerstein" completed Wrede's April 2002 "Past Performance"
27 evaluation. Id. at 3 (emphasis added). Plaintiff contends that Feuerstein "permitted Fisher
28 to be involved in the RIF assessments of April, 2002 and July, 2002." Id. at 5.

1    Plaintiff's arguments regarding Fisher are unpersuasive. First, the significance of
2 Feuerstein's involvement is unclear. According to plaintiff, Feuerstein *or* Wright was
3 involved in Wrede's April 2002 RIF assessment. However, Wright, but not Feuerstein,
4 completed Wrede's "Past Performance" and "Ability to Perform Remaining Work"
5 evaluations for the October 2002 RIF assessments. Response at 3. The October 2002 RIF
6 evaluations, but not the April 2002 evaluations, caused Wrede's layoff. Plaintiff does not
7 argue that Wright relied on Fisher's evaluations in assessing Wrede for the October 2002
8 RIF.

9    A review of facts plaintiff does not cite reveals that Feuerstein "met with his managers
10 . . . to review the scores" for their "Past Performance" and "Ability to Perform Remaining
11 Work" evaluations as part of the October 2002 RIF. PSOF 122.[4] This does not establish that
12 Feuerstein took an adverse employment action in reliance on factors affected by Fisher's
13 alleged animus. Fisher's evaluations were not reviewed as part of the October 2002 RIF.
14 Therefore, we are left with the irrelevant fact that Feuerstein allowed Fisher to participate in
15 RIFs that did not result in Wrede's termination.

16    Plaintiff next argues that defendant's reasons for laying off Wrede were pretextual
17 because another reasonable employer would have assessed Wrede significantly better than
18 defendant did. Response at 5. Plaintiff cites Abuan v. Level 3 Commun., Inc., 353 F.3d
19 1158, 1170 (10th Cir. 2003) for the proposition that "[t]he jury should be permitted to
20 consider the evaluation of an employee's performance by her co-workers." Response at 6.
21 Abuan holds that a jury instruction may not instruct jurors to overlook evidence of co-

---

[4] Contrary to the parties' assertions, we are not required to pour through the hundreds of pages of facts submitted in support of their briefs. See, e.g., Motion for Summary Judgment at 2 (urging the court to review defendant's 283 statements of facts and 44 exhibits "in their entirety"). This is an adversary system. The parties must themselves argue a fact's legal significance within the ample space allotted to their memoranda of points and authorities. Remarkably, of the hundreds of facts set out in the parties' statements, a significant portion are never cited in the briefs. To persuade us that a particular fact is legally relevant, a party must *at least* cite to it.

- 7 -

1 workers' performance assessments. 353 F.3d at 1174. It does not establish that the kind of
2 evidence introduced by plaintiff is probative of pretext.

3 Nevertheless, we address the merits of plaintiff's evidence. Plaintiff argues that
4 "Dave Eroh, a long-time ME who often worked as a lead, provides a significantly better
5 assessment of Wrede than did her managers." Response at 6. Eroh's evaluation is
6 meaningless in isolation. Wrede was not singled out for termination, but was evaluated
7 against others Eroh did not assess. Eroh might be an unusually soft grader who inflates
8 everyone's scores.

9 Plaintiff next contends that "[m]any of the manufacturing managers whom Wrede
10 supported . . . believed she should not have been selected for RIF." Response at 7. "Some
11 managers identified male MEs who, in their opinion, should have been selected for RIF over
12 Wrede." Id. "Frank Morris . . . told Wrede that he found her selection for lay-off to be
13 questionable because she did good work." PSOF 226. Although these managers purportedly
14 supervised Wrede, they are nevertheless unqualified to question Wrede's layoff. Plaintiff
15 does not allege that any of these managers supervised the other MEs subject to the RIF.
16 Although they may have disagreed with the result of the RIF, a difference of opinion is not
17 evidence that the evaluations are unworthy of credence.

18 Plaintiff also asserts that Feuerstein "did not address these managers' position that,
19 if a RIF was necessary, male MEs who had not complained about discrimination, should
20 have been selected for RIF." Response at 7. This argument suggests that Wrede should have
21 been exempt from RIF because she had previously complained of discrimination. Title VII
22 does not require an employer to give preference to a minority or female applicant "whenever
23 that person's objective qualifications were equal to those of a white male applicant," see
24 Burdine, 450 U.S. at 259, 101 S. Ct. 1089, 1096. Similarly, it does not require employers to
25 shield an employee from a legitimate layoff just because she has engaged in conduct Title
26 VII protects.

27 Next, plaintiff argues that "contemporaneous evidence does not support the RIF scores
28 given to Wrede" because she "was not on a formal performance improvement plan in 2002.

- 8 -

1  Response at 7. Plaintiff does not explain the significance of this fact. Therefore, we
2  conclude that there is insufficient evidence to suggest that Wrede's identification for layoff
3  was discriminatory.

4                                              B.

5      Plaintiff also notes that although seven MEs in D32 were identified for layoff in
6  October 2002, only Wrede, the sole woman, was actually terminated. Response at 8. In the
7  context of a RIF, the fact that a terminated employee within a protected group is treated less
8  favorably than people outside of the group is relevant to establishing a prima facie case. See
9  Oxman v. WLS-TV, 846 F.2d 448, 455 (7th Cir. 1988). Plaintiff argues that Robert
10 Feuerstein, the ME department manager, "personally helped" two of the male employees
11 identified for layoff find new positions within Boeing. Response to DSOF at 32, 33.
12 Therefore, four of the male employees were not helped. Sex did not determine whether an
13 employee was assisted.

14     Even if we assume that plaintiff can meet its prima facie burden, defendant has
15 articulated a nondiscriminatory reason for the fact that Wrede was not placed in a different
16 position within Boeing. Defendant argues that "the male coworkers who found other jobs
17 within Boeing did so through their own personal initiative and efforts, with no substantive
18 assistance from Bruce Wright or Rob Feurstein." Reply at 6 (citing DSOF 132-133, 138).

19     Plaintiff contends that this explanation is pretextual because "the use of subjective
20 criteria in these particularly [sic] circumstances is itself evidence . . . to support the
21 conclusion that Boeing's asserted rationale is pretextual." Response at 8. No matter what
22 the circumstance, an employer's use of subjective criteria is not itself probative of pretext.
23 The Ninth Circuit has "explicitly rejected the idea that an employer's use of subjective
24 employment criteria has a talismanic significance." Casillas v. United States Navy, 735 F.2d
25 338, 345 (9th Cir. 1984).

26     Finally, plaintiff contends that defendant's assertion that it laid off Wrede in a RIF is
27 pretextual "because there was no reduction in force in the number of people performing D32
28 ME work." Response at 9 (citing, among other cases, Pippin v. Burlington Res. Oil & Gas

1 Co., 440 F.3d 1186, 1193 (10th Cir. 2006)).  Plaintiff asserts that "a male employee, Darryl
2 Faust" was brought in to assume her duties.  Id. at 9.  The fact that Wrede's duties were
3 assumed by another employee does not establish pretext.  Pippin, 440 F.3d at 1194.[5]

C.

5 Defendant also moves to dismiss plaintiff's retaliation claims.  Defendant
6 acknowledges that Wrede's allegations regarding Fisher and Adams establish that Wrede
7 engaged in protected conduct.  Motion for Summary Judgment at 11.  Further, defendant
8 does not dispute that Wrede's layoff is an adverse employment action.  Id.  However,
9 defendant argues that "there is no evidence of any causal connection between Wrede's
10 complaints and her layoff."  Motion for Summary Judgment at 11.  "To establish a prima
11 facie case of retaliation, an aggrieved employee must show that '(1) he has engaged in
12 statutorily protected expression; (2) he has suffered an adverse employment action; and (3)
13 there is a causal link between the protected expression and the adverse action.' "  EEOC v.
14 Dinuba Med. Clinic, 222 F.3d 580, 586 (9th Cir. 2000) (citation omitted).

15 "To show the requisite causal link, the plaintiff must present evidence sufficient to
16 raise the inference that her protected activity was the likely reason for the adverse action."
17 Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).  Causation may be inferred
18 "from the proximity in time between the protected action and the allegedly retaliatory
19 discharge."  Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986).

20 Defendant first argues there is no causal link because Fisher "had no role whatsoever
21 in Wrede's October 2002 RIF assessment or her selection for layoff."  Id.  As explained
22 above, Wright completed Wrede's "Past Performance" and "Ability to Perform Remaining

---

[5] Plaintiff does not explain whether defendant's failure to place Wrede in another position is evidence of retaliatory animus, or sex-based animus. Rather, it argues that it is evidence of pretext in general.  Response at 8-9.  We reject plaintiff's attempt to raise suspicion were none is warranted in the context of its disparate treatment claim.  Our conclusion also applies to any retaliation claim stemming from defendant's failure to assist Wrede after she was identified for layoff.  The fact an employer used subjective criteria is not probative of pretext in either context.

- 10 -

Work" evaluations for the October 2002 RIF assessments, and did not rely on Fisher's evaluations. Although Wright arguably reviewed Adams' evaluations of Wrede, completed after Adams learned of Wrede's complaint, this fact is also insufficient to establish causation. There is no evidence in the record that Wright's evaluations were completed in reliance on Adams' comments. The mere existence of those comments does not suggest that Wrede's complaint against Adams was the likely reason for the adverse action.

Next, defendant argues that Feuerstein's involvement in Wrede's termination cannot establish causation. Feuerstein learned of Wrede's complaint against Fisher in 1999. At the time that Feuerstein reviewed, but made no changes to, Wright's October 2002 evaluations of Wrede, he was aware of Wrede's complaint. Motion for Summary Judgment at 12. This "lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir. 1998). Also, we do not infer causation solely because Feuerstein knew of Wrede's complaint.[6]

One year lapsed between the time Wright learned of Wrede's complaint against Adams, and the time Wright evaluated Wrede. DSOF 42. This is not the sort of temporal proximity that establishes causation. See Villiarimo, 281 F.3d at 1065 (citing with approval a case which held that "a one-year interval between the protected expression and the employee's termination, standing alone, is too long to raise an inference of discrimination").

---

[6] The fact that an employer makes an adverse employment decision against an employee he knows has engaged in conduct protected by Title VII should never on its own establish causation. Managers have a right to know that their subordinates are accused of conduct Title VII prohibits. To effectively remedy prohibited conduct, they must also know who brings the accusations. To suggest that knowledge alone establishes causation is to infer that a manager's awareness of a complaint's details taints that manager's ability to evaluate the complaint-maker, no matter how much time has passed.

Absent any inference permitted by temporal proximity, Wright's knowledge that Wrede complained about Adams cannot on its own establish causation.[7]

Plaintiff contends that both Fisher and Adams participated in the assessments that caused Wrede's layoff. Response at 1-2. We have already rejected these assertions. Therefore, we conclude that plaintiff has not established a prima facie case of retaliation. Additionally, defendant has articulated nondiscriminatory reasons for the layoff. We have already assessed, and rejected, plaintiff's claim of pretext. Therefore, we grant defendant's motion for summary judgment as to each claim relating to defendant's termination of Renee Wrede.[8]

## II.

We next turn to the claims relating to Castron's termination.[9] Castron became a liaison engineer (LE) in defendant's electrical engineering department in 1997, DSOF 147, with a skill code of 62E, DSOF 216. From 1998 through January 2003, that department was lead by Bill Charlton. DSOF 148. In late 2000, Castron was transferred into pre-shop analysis (PSA). DSOF 153. Castron requested a transfer out of PSA on January 12, 2002, and again in July 2002. DSOF 179, 180. Castron was transferred to Structures-Mod around August 12, 2002. PSOF 453. She was laid off as a result of her October 2002 RIF evaluations.

---

[7] Wright knew that there had been a workplace-related incident between Wrede and Fisher, but did not know that it involved conduct protected by Title VII. DSOF 38. Feuerstein never knew of Wrede's complaint against Adams. DSOF 49.

[8] The fact that we do not reevaluate plaintiff's pretext evidence in the context of the retaliation claim does not mean that retaliation-based animus is the same as sex-based animus. Plaintiff unsuccessfully attempted to establish that defendant's proffered reasons were suspect and inaccurate through circumstantial evidence. Our rejection of plaintiff's generalized arguments applies equally to both claims.

[9] Again, we are forced to sift through retaliation and disparate treatment arguments without the aid of any kind of organization or acknowledgment that the claims differ. See Response at 10-18.

A.

We first turn to plaintiff's disparate treatment claims. Defendant contends that plaintiff's claim of transfer-based discrimination fails because Castron's transfer was not an adverse employment decision. Motion for Summary Judgment at 14. Plaintiff argues that Castron's transfer rendered her more vulnerable to layoff because she was evaluated alongside "experienced engineers" even though she was still a trainee. Response at 17. We accept that "a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. v. White, __ U.S. __ , 126 S. Ct. 2405, 2415 (2006).

Nevertheless, plaintiff's claim fails because similarly situated men were not treated more favorably than Castron. A male employee in Castron's skill code, Donald Duff, was also transferred into Structures-Mod around the same time as Castron. Reply at 11 (citing DSOF 156, which cites DSOF Exhibit 32). Like Castron, Duff lacked mechanical engineering experience, but was evaluated against employees who did have the requisite experience. Id.; see also DSOF Exibit 40 at 56-59. Duff was also identified for layoff in October 2002. Reply at 11 (citing DSOF 249, which cites DSOF Exhibit 40).

Plaintiff alleges that Castron, a trainee, could have been excused from the RIF because of her recent transfer. Response at 16. One of defendant's female employees in skill code D32, "Lorraine," was excluded from the October 2002 RIF. PSOF Exhibit 55. Before the RIF, Lorraine agreed to transfer into a department in which she would have to undergo training on the condition that her skill code would not change. Id. Two weeks before the October RIF, which targeted D32s, Lorraine's skill code was changed to D32. Id. She was exempted from the RIF because of the specific terms of her transfer. After Lorraine was excluded from RIF, defendant decided to also exclude two additional employees who transferred into D32 two weeks before the RIF. Id.

Plaintiff's evidence defeats its prima facie case. For its comparator evidence to be relevant, it must be evidence of a similarly situated male employee treated more favorably than Castron. First, Castron compares herself to another woman. Second, she was not

- 13 -

similarly situated in several ways. First, Lorraine was in a different skill code than Castron. Second, unlike Castron, Lorraine transferred into a new skill code two weeks before the RIF. Castron remained within the same skill code before and after her transfer. Even if Lorraine was similarly situated, this fact would not help plaintiff's case. Instead, it would be evidence that Castron's transfer had nothing to do with her sex. Therefore, we grant defendant's motion for summary judgment as to plaintiff's claim that Castron's transfer was an act of sex discrimination.

B.

Next, we address whether Castron was terminated as a result of her sex. Defendant does not dispute plaintiff's prima facie case in this context. See Motion for Summary Judgment at 4. Rather, defendant contends that Castron was terminated because she "belonged to the group of individuals who, when assessed in accordance with Boeing's RIF procedure, obtained the lowest total evaluation scores." Id. at 5. This is a sufficient nondiscriminatory reason for Castron's layoff. Therefore, plaintiff must show that the articulated reason is pretextual either directly or indirectly.

Plaintiff points to several allegedly sex-based remarks uttered by Castron's supervisors, including some who were involved in her RIF evaluations, and co-workers. See Response at 10-13. The comments plaintiff presents do not belong in the workplace. When directed at women who work in a predominantly male field like engineering, the remarks might make women feel unwelcome. They certainly reflect poorly on those who made them. However, to constitute direct evidence of sex-based termination, they must be linked to the adverse employment decision. Each comment and remark introduced by plaintiff is unrelated to Castron's termination. At the pretext stage, plaintiff must show that this kind of evidence is somehow related to defendant's decision to terminate Castron. Plaintiff cannot simply introduce this kind of evidence and rest its case.

Therefore, because the remarks and comments plaintiff introduces are not on their own probative of pretext, we turn to whether plaintiff has any other evidence that defendant's

1  reasons are pretextual. Plaintiff argues that the scores given by Hobby "lacked foundation
2  and were grossly unfair." Response at 14.[10] Plaintiff contends that Hobby's scores were
3  flawed because at the time of his evaluations, he had only supervised Castron for 2.5 months,
4  yet failed to review or consult any of Castron's prior evaluations. Response at 14. Plaintiff
5  cites the opinion of "a manager with past experience conducting RIF assessments" for the
6  proposition that scoring an employee for a RIF is "tough" when a manager has only
7  supervised that employee for a short period of time. Id. at 15. According to plaintiff, the
8  person most qualified to evaluate Castron's performance during the time at issue would have
9  reported to Hobby that Castron was "doing ok." PSOF 510, 519. Plaintiff fails to
10 demonstrate that Hobby's evaluations were actually inaccurate. To suggest that they might
11 have been inaccurate is not evidence of pretext.

12 Next, plaintiff argues that Castron was "set up to fail" because she was compared to
13 seasoned employees in a field in which she was still a trainee. Response at 15. We have
14 already acknowledged that a pre-RIF transfer might, under these circumstances, be adverse.
15 Still, we decline to conclude that such a transfer is evidence of pretext. Other employees
16 were also transferred into departments pre-RIF, and were assessed against more experienced
17 employees for purposes of the RIF.

18 Plaintiff also contends that the fact that another male filled Castron's position after
19 her termination is evidence of pretext because it suggests that defendant had no genuine need
20 to reduce the number of workers in Castron's skill code. Response at 15. Castron was
21 identified for RIF in October 2002. It is undisputed that she transferred into the position that
22 made her more vulnerable to layoff in August 2002. Plaintiff's own exhibit indicates that the
23 male who allegedly filled her position was hired before Castron transferred into her final
24

---

25
26 [10] Plaintiff cites to facts 454, 485-529, and exhibits 59 and 62 in support of this assertion. We reviewed each cited fact and exhibit. The only relevant facts are included in our analysis. Again, we note that citing to a span of facts does not aid plaintiff's argument.
27 The parties must themselves separate the wheat from the chaff in a legally significant
28 fashion.

- 15 -

1  position.  See PSOF Exhibit 54 (identifying July 18, 2002 as the employee's start date).  We
2  are left with Castron's assertion that shortly after her last day of work, she remembers being
3  told that "it was true that a contractor had been hired to replace me."  PSOF Exhibit 48 at 3.
4  This is not enough to establish that Castron's position was not eliminated.  Plaintiff's own
5  evidence suggests that an employee within Castron's department assumed her duties.

## C.

Defendant moves for summary judgment as to Castron's transfer-based retaliation claim, arguing that plaintiff cannot establish causation between "any protected activity by Castron and her transfer."  Motion for Summary Judgment at 15.  Defendant contends that Bill Charlton, the person who decided to transfer Castron, had no knowledge that Castron engaged in protected conduct.

In early August 2002, Castron asked Charlton for a transfer because of difficulties she was having with her male coworkers in PSA.  DSOF 181.  Castron told Charlton that "she was having a hard time with the guys," that "the guys were keeping her from performing her job, and that she really needed to move."  DSOF 182.  Additionally, Castron stated that "the guys would not answer a direct question, did not want her there, and did not give her a chance."  DSOF 183.  Castron told Charlton that she was working in a hostile work environment.  DSOF 182.  Charlton characterized Castron's problems in PSA as "personal problems," frustrations that "she was given less technically demanding tasks to work," and "compatibility issues."  PSOF Exhibit 53.

By complaining of personality conflicts, Castron did not oppose practices Title VII renders unlawful.  However, plaintiff contends that "[t]he use of the terminology, 'hostile work environment' is equivalent to saying 'because of sex.' "  Response to DSOF at 41. Therefore, plaintiff argues, Charlton had knowledge of the fact that Castron engaged in protected conduct because of "Castron's precise language and the fact that she was the only woman in the PSA group."  Response at 16.  Although close, we assume, without deciding, that this is sufficient evidence of opposition to unlawful activities.

- 16 -

1    Alternatively, defendant argues that Charlton's awareness of plaintiff's complaints is
2 immaterial because his decision to transfer Castron was not an adverse employment action.
3 Reply at 9. Because the transfer made Castron more vulnerable to RIF, we assume that the
4 transfer was an adverse action, and that plaintiff has satisfied its prima facie burden.
5 Defendant has stated sufficient nondiscriminatory reasons for Castron's transfer: Castron
6 repeatedly requested a transfer, and was moved in order to accommodate her request.
7 Therefore, to rebut these reasons, plaintiff must present evidence of pretext.

8    We have already concluded that plaintiff has not presented direct evidence of
9 discrimination. Additionally, evidence of discriminatory statements not related to Castron's
10 transfer, uttered by Charlton or others, does not support an inference that defendant's reasons
11 for Castron's transfer are pretextual.

12    Here, plaintiff's offer of evidence of pretext consists of the allegation that Charlton
13 "reneged" on his promise to give Castron time to train before she was evaluated against more
14 experienced engineers in Structures-Mod. Response at 17. Castron alleges that:

> I relied on Mr. Charlton's assurance that I would not be adversely affected in the RIF when I decided to accept the transfer to Structures Mod in August 2002 . . . I assumed that Boeing would give me the time and training I needed to succeed.

18 PSOF Exhibit 50 ¶4; see also PSOF Exhibit 42 188-89 (when Castron moved to Structures-
19 Mod, she thought "it wouldn't affect [her] in the RIF because [she] would be a trainee").

20   Even if Charlton did promise Castron that she would not be affected by her transfer,
21 this is not evidence of pretext. Defendant was entitled to evaluate Castron's ability to
22 perform within her new department. See DSOF Exhibit 32 ("The purpose of the RIF
23 assessment was to determine who was able to perform remaining work."). To evaluate
24 Castron's potential, defendant was entitled to rely on Castron's 2.5 months of experience in
25 Structures-Mod. To that end, Richard Hobby, Castron's supervisor during the relevant time
26 period, concluded that Castron "was unable to work independently" and "did not have the
27 skills to create an engineering sketch." DSOF Exhibit 32 at 82, 85.

Defendant was not required to treat Castron more favorably than other employees and exempt her from a RIF. Defendant's failure to treat Castron better than other employees is not evidence of pretext. Because plaintiff has not rebutted defendant's legitimate reasons for Castron's transfer, we conclude that Castron's transfer was not retaliatory.

D.

Defendant also moves for summary judgment as to Castron's retaliatory layoff claim. Defendant contends that Richard Hobby, who evaluated Castron as part of the October 2002 RIF, lacked any knowledge that Castron opposed conduct made unlawful by Title VII. Motion for Summary Judgment at 16. Plaintiff argues that Hobby had knowledge of the conditions that spurred Castron's transfer request. Response at 16. Plaintiff contends that a written statement prepared by Charlton "details a meeting with Hobby and Castron in which Castron articulates some of her challenges with the men in PSA." Response at 16. There, Charlton recounts his meeting with Hobby and Castron as follows:

> I met with A. Castron and her Technical Lead, R. Hobby, to discuss her request for immediate transfer and PSA Team compatibility issues. She expressed her feelings that 'She was constantly given simple technical tasks to work, include the Archie Box and was not given more challenging assignments.' She also expressed her concerns of 'having to sit next to J.Cotone and that he would not communicate with her.' She felt 'the Team of PSA engineers and the Team Leader, D. Stallings, did not help her work these issues. I discussed moving her off the PSA Team and to the Structures Modification Team. At first she was reluctant and thought that J. Cotone should move and not her. After further discussion, we all agreed that she should move from the PSA Team to the Structures Modification Team as soon as possible.

PSOF Exhibit 53. This does not suggest that Castron made any mention of a "hostile work environment," or otherwise gave Hobby notice that she was opposing conduct Title VII makes unlawful.

However, we conclude that the fact that Castron confronted Hobby about his "little girl" comment establishes that she engaged in protected conduct. See Response at 16 ("Castron had confronted Hobby about calling her a 'little girl,' which led to his refusal to

- 18 -

speak with her for 20 months, until he later became her boss.").[11] Therefore, we assume for purposes of this order that plaintiff has met its prima facie burden for a termination-based retaliation claim. Defendant has already proffered non-discriminatory reasons for Castron's termination. Plaintiff must rebut those reasons to survive summary judgment.

We conclude that plaintiff has failed to present any evidence that supports an inference that defendant's reasons are pretextual. To be sure, the "little girl" comment reflects quite poorly on Hobby. But, on its own, it is insufficient to establish an inference that whatever animus spurred Hobby to make that comment also tainted his otherwise accurate evaluations. Moreover, the time lapse between the comment and Castron's termination is significant. A lengthy time lapse "between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference" of a causal connection. Dowe, 145 F.3d at 657. Similarly, it negates the inference that Hobby's 22-month old animus influenced his evaluations. Therefore, we grant defendant's motion as to any claim alleging retaliatory termination.

**III.**

Finally, we address plaintiff's motion to strike. Defendant responded to plaintiff's statement of facts and replied to plaintiff's response to defendant's statement of facts. These supplemental filings are not contemplated by the local rules.[12] Plaintiff argues that defendant's supplemental documents contain so much legal argument that they are additional replies. We resolved this case without resort to any of the items plaintiff moves to strike.

---

[11] Hobby states that he "was doing an Arty Johnson impression at the time, so the voice that [he] used was an impression of an actor, and it was meant in good humor." DSOF Exhibit 32 at 197. Hobby explains that "[i]t only took a fraction of a moment to see that it was not taken well, and [he] immediately apologized." Id.

[12] Indeed, even if we construed LRCiv 56.1(b) to permit such documents, we would still disregard them by suspending the local rule. See LRCiv 83.6. Rules of procedure in this court must be construed and administered "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Defendant's excessive litigation of plaintiff's version of the facts has unnecessarily delayed adjudication of this case.

Therefore, plaintiff's motion is denied on grounds of mootness.[13]  Also, we note that plaintiff's motion itself is not allowed by the rules.  Motions to strike under Rule 12(f), Fed. R. Civ. P. are limited to pleadings under Rule 7(a), Fed. R. Civ. P., in contrast to motions and papers under Rule 7(b), Fed. R. Civ. P.  Because responses and replies to statements of fact are not pleadings, plaintiff may not challenge them by way of a motion to strike.  The remedy for defendant's abuse of the rules is that we simply ignore defendant's abusive filings.

**THEREFORE, IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 103).  **IT IS FURTHER ORDERED DENYING** plaintiff's "Motion to Strike 'Defendant's "Response to Plaintiff's Statement of Facts' and 'Defendant's Reply to Plaintiff's Local Rule of Practice 56.1(b) Response to Defendant's Separate Statement of Facts' or, in the Alternative Motion for Leave to Respond to Both of these Pleadings" on grounds of mootness (doc. 124).

DATED this 15th day of August, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

---

[13] Because we do not rely on the items plaintiff moves to strike, we need not afford plaintiff an opportunity to respond.

- 20 -